# Exhibit A

**LEGAL
DEPARTMENT**

AMERICAN CIVIL LIBERTIES UNION

**AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION**
NATIONAL OFFICE
125 BROAD STREET, 18TH
FL.
NEW YORK, NY 10004-2400
T/212.549.2500
WWW.ACLU.ORG

**OFFICERS AND
DIRECTORS**
SUSAN N. HERMAN
*PRESIDENT*

ANTHONY D. ROMERO
*EXECUTIVE DIRECTOR*

ROBERT B. REMAR
*TREASURER*

October 30, 2017

OSD/JS FOIA Requester Service Center
Office of Freedom of Information
1155 Defense Pentagon
Washington, D.C. 20301-1155
Fax: (571) 372-0500

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505
Fax: (703) 613-3007

Laurie Day
Chief, Initial Request Staff
Office of Information Policy,
    Office of Attorney General,
    and Office of Deputy
    Attorney General
Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, D.C. 20530-0001
Fax: (202) 514-1009

Arnetta Mallory, FOIA Initiatives Coordinator
National Security Division
Department of Justice
950 Pennsylvania Avenue N.W.
Room 6150
Washington, D.C. 20530-0001
nsdfoia@usdoj.gov

Melissa Golden
Lead Paralegal and FOIA Specialist
Office of Legal Counsel
Department of Justice
Room 5511, 950 Pennsylvania Avenue, NW

Washington, D.C. 20530-0001

Email: usdoj-officeoflegalcounsel@usdoj.gov

Office of Information Programs and Services

A/GIS/IPS/RL

U.S. Department of State

Washington, D.C. 20522-8100

Fax: (202) 261-8579

Re:    **Request Under Freedom of Information Act**
**(Expedited Processing & Fee Waiver/Limitation Requested)**

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

To Whom It May Concern:

The American Civil Liberties Union and the American Civil Liberties Union Foundation (together, the "ACLU")[1] submit this Freedom of Information Act ("FOIA") request (the "Request") for the Trump administration's rules governing the use of lethal force abroad, known as the "Principles, Standards, and Procedures."

## I. Background

In 2001, the U.S. government began conducting lethal strikes abroad, including through the use of armed drones.[2] The government has since carried out hundreds of these strikes in areas far from any traditional battlefield, outside what it calls "areas of active hostilities."[3] These strikes have killed hundreds of civilians, including children.[4]

---

[1] The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, educates the public about civil rights and civil liberties issues across the country, directly lobbies legislators, and mobilizes the American Civil Liberties Union's members to lobby their legislators. The American Civil Liberties Union is a separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

[2] Dylan Matthews, *Everything You Need to Know About the Drone Debate, in One FAQ*, Wash. Post, Mar. 8, 2013, https://www.washingtonpost.com/news/wonk/wp/2013/03/08/everything-you-need-to-know-about-the-drone-debate-in-one-faq.

[3] Jessica Purkiss & Jack Serle, *Obama's Covert Drone War in Numbers: Ten Times More Strikes than Bush*, Bureau of Investigative Journalism, Jan. 17, 2017, https://www.thebureauinvestigates.com/stories/2017-01-17/obamas-covert-drone-war-in-numbers-ten-times-more-strikes-than-bush; Paul D. Shinkman, *'Areas of Active Hostilities': Trump's Troubling Increases to Obama's Wars*, U.S. News, May 16, 2017,

For years, the lethal strike program operated without formal rules.[5] After backlash, and following promises of more transparency and stricter controls for the program, the Obama administration issued the Presidential Policy Guidance, or "PPG," in May 2013.[6] When he announced the new rules, President Obama stated that his "administration has worked vigorously to establish a framework that governs [the United States'] use of force against terrorists—insisting upon clear guidelines, oversight and accountability that is now codified in Presidential Policy Guidance."[7]

The ACLU submitted a FOIA request for the PPG on October 15, 2013, and filed a lawsuit to enforce the request in March 2015.[8] In August 2016, after the United States District Court for the Southern District of New York expressed skepticism that the PPG could be withheld in its entirety, the government publicly released a redacted version of the PPG.

Beginning early in President Trump's administration, news reports suggested that the administration was working to "dismantle" or rewrite the PPG.[9] After months of speculation, a "cabinet-level committee of the top leaders of national-security agencies and departments" reportedly approved a

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

https://www.usnews.com/news/world/articles/2017-05-16/areas-of-active-hostilities-trumps-troubling-increases-to-obamas-wars.

[4] *Id.*

[5] *See, e.g.,* Scott Shane, *Election Spurred a Move to Codify U.S. Drone Policy*, N.Y. Times, Nov. 24, 2012, http://www.nytimes.com/2012/11/25/world/white-house-presses-for-drone-rule-book.html.

[6] *See, e.g.,* Medea Benjamin, *Finally, the Backlash Against Drones Takes Flight*, Huff. Post, Mar. 25, 2013, https://www.huffingtonpost.com/medea-benjamin/finally-the-backlash-against-drones_b_2950601.html; President Barack Obama, Speech on Drone Policy at the National Defense University (May 23, 2013), http://www.nytimes.com/2013/05/24/us/politics/transcript-of-obamas-speech-on-drone-policy.html.

[7] President Barack Obama, Speech on Drone Policy, *supra* note 6.

[8] The ACLU has previously submitted four separate FOIA requests concerning the United States' lethal strikes abroad during the Obama administration. *See* Request Under Freedom of Information Act by Jonathan Manes, ACLU, Jan. 13, 2009, https://www.aclu.org/files/assets/2010-1-13-PredatorDroneFOIARequest.pdf; Request Under Freedom of Information Act by Nathan Freed Wessler, ACLU, Oct. 19, 2011, https://www.aclu.org/files/assets/awlaki_foia_final_2011_10_19.pdf; Request Under Freedom of Information Act by Brett Max Kaufman, Oct. 15, 2013, https://www.aclu.org/legal-document/aclu-v-doj-records-casualties-targeted-killing-program-foia-foia-request; and Request Under Freedom of Information by Anna Diakun, ACLU, Sept. 14, 2016 (withdrawn).

[9] *See, e.g.,* Charlie Savage & Eric Schmitt, *Trump Administration Is Said to Be Working to Loosen Counterterrorism Rules*, N.Y. Times, Mar. 12, 2017, https://www.nytimes.com/2017/03/12/us/politics/trump-loosen-counterterrorism-rules.html.

3

new set of rules to replace the PPG on or about September 14, 2017.[10]  Key changes included in the new rules were described by administrative officials in media reports.[11]  On October 28, 2017, the *New York Times* reported that President Trump had signed the proposed new rules, without any "major changes."[12]  These new rules—called the "Principles, Standards, and Procedures"—now govern the United States' use of lethal force outside conventional war zones in place of the PPG.

Lethal strikes carried out under this new set of rules may have disastrous consequences.  Although flawed, the PPG contained beneficial safeguards against civilian casualties, but according to news reports, the Principles, Standards, and Procedures eliminates some of these safeguards.[13]  For example, under the PPG, the government could typically only conduct lethal strikes against individuals who posed a "continuing, imminent threat to U.S. persons."[14]  The new rules reportedly eliminate this requirement of "imminence," and permit the targeting of anyone the government suspects is a "member of a group deemed covered by the 9/11 war authorization," whether or not those individuals pose a specific threat.[15]  Although the new rules reportedly maintain the PPG's requirement that there be "near certainty" that no civilians would be killed in any planned strike, the new rules reportedly now only require a "reasonable certainty" that the targeted individual is in the strike zone, rather than the "near certainty" required under the PPG.[16]

Additionally, the Principles, Standards, and Procedures reportedly eliminate the high-level vetting for each individual strike required under the PPG, instead requiring only "higher-level approval" of "country plans" that will be reviewed yearly.[17]  In effect, these rules "approve a 'persistent campaign of direct action' for various countries" where suspected members of certain terrorist groups are operating.[18]

---

[10] Charlie Savage & Eric Schmitt, *Trump Poised to Drop Some Limits on Drone Strikes and Commando Raids*, N.Y. Times, Sept. 21, 2017, https://nyti.ms/2jPwvnB.

[11] *Id.*; *see also* Charlie Savage, *Will Congress Ever Limit the Forever-Expanding 9/11 War?*, N.Y. Times, Oct. 28, 2017, https://www.nytimes.com/2017/10/28/us/politics/aumf-congress-niger.html.

[12] Savage, *supra* note 11.

[13] *Id.*; Savage & Schmitt, *Trump Poised to Drop Some Limits on Drone Strikes and Commando Raids*, *supra* note 10.

[14] Presidential Policy Guidance at 11.

[15] Savage, *supra* note 11.

[16] *Id.*

[17] Savage & Schmidt, *Trump Poised to Drop Some Limits on Drone Strikes and Commando Raids*, *supra* note 10.

[18] *Id.*; Savage, *supra* note 11.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

4

It is unclear whether other safeguards included in the PPG and previously made public—such as the requirement of a finding that capture of a suspect is not feasible—have been maintained or not.

Finally, reports suggest that the Trump administration's new lethal force rules will expand Department of Defense and Central Intelligence Agency authority to conduct lethal strikes and offensive ground combat operations abroad. This is expected to result in more frequent strikes, against individuals with "no special skills or leadership roles," and in more places.[19] These developments have been the subject of widespread media attention and public controversy.[20]

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

The Obama administration's lethal force rules resulted in the deaths of hundreds of civilians, and loosening the rules further has the potential to take an even more devastating toll. To provide the American public with information about the Trump administration's lethal strike policies, the ACLU seeks the release of the Principles, Standards, and Procedures.

## II. Requested Record

The ACLU seeks the release of the Trump administration's rules governing the use of lethal force abroad, known as the "Principles, Standards,

---

[19] *Id.*

[20] *See, e.g.*, Daniel R. Mahanty, *We're Loosening the Rules for Killing. This Won't End Well.*, USA Today, Oct. 30, 2017, https://www.usatoday.com/story/opinion/2017/10/30/loosening-rules-for-killing-could-make-us-less-safe-daniel-mahanty-column/804665001; Monica Hakimi, *Three Half-Truths on U.S. Lethal Operations and Policy Constraints*, Just Security (Sept. 25, 2017, 9:00 AM), https://www.justsecurity.org/45315/half-truths-u-s-lethal-operations-policy-constraints; Daphne Eviatar, *Easing U.S. Killings Outside War Zones Would Be a Serious Mistake*, Just Security (Oct. 2, 2017, 8:37 AM), https://www.justsecurity.org/45532/easing-killings-war-zones-mistake; Ken Dilanian & Courtney Kube, *Trump Administration Wants to Increase CIA Drone Strikes*, NBC News, Sept. 18, 2017, https://www.nbcnews.com/news/military/trump-admin-wants-increase-cia-drone-strikes-n802311; Letta Tayler, *How Obama's Drones Rulebook Enabled Trump*, Just Security (Sept. 26, 2017, 9:10 AM), https://www.justsecurity.org/45375/obamas-drones-rulebook-enabled-trump; Charlie May, *Trump Plans to Lift Restraints on Drone Strikes*, Salon, Sept. 22, 2017, https://www.salon.com/2017/09/22/trump-plans-to-lift-restraints-on-drone-strikes; Alexandra Wilts, *Trump Under Fire for Plans to Scrap Obama-Era Restrictions on Drone Strikes*, Independent, Sept. 22, 2017, http://www.independent.co.uk/news/world/americas/us-politics/trump-drone-strikes-rules-scrapping-attacked-human-rights-a7962517.html.

and Procedures," as well as any cover letter or other document attached thereto.[21]

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive electronic records be provided electronically in their native file format, if possible. Alternatively, the ACLU requests that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

### III. Application for Expedited Processing

The ACLU requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).[22] There is a "compelling need" for this record, as defined in the statute, because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

A.      *The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute. 5 U.S.C. § 552(a)(6)(E)(v)(II).[23] Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group (the Electronic Privacy Information Center) that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").[24]

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

[21] The ACLU's FOIA request should be construed to include the record containing the Trump administration's rules governing the use of lethal force as described in Part I, even if the final version of this document bears a different title or form than that specifically requested here.

[22] *See also* 32 C.F.R. § 286.8(e) (DOD); 32 C.F.R. § 1900.34 (CIA); 28 C.F.R. 16.5(e) (DOJ); 22 C.F.R. § 171.11(f) (DOS); 5 C.F.R. § 1303.10(d) (OMB).

[23] *See also* 32 C.F.R. § 286.8(e)(1)(i)(B) (DOD); 32 C.F.R. § 1900.34(c)(2) (CIA); 28 C.F.R. 16.5(e)(1)(ii) (DOJ); 22 C.F.R. § 171.11(f)(2) (DOS); 5 C.F.R. § 1303.10(d)(1)(ii) (OMB).

[24] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g., Leadership Conference on Civil Rights v. Gonzales,*

The ACLU regularly publishes *STAND*, a print magazine that reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 920,000 people. The ACLU also publishes regular updates and alerts via email to over 3.1 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to over 3.83 million social media followers. The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[25] and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[26]

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available

---

404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

[25] *See, e.g.*, Press Release, American Civil Liberties Union, U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit (Aug. 6, 2016), https://www.aclu.org/news/us-releases-drone-strike-playbook-response-aclu-lawsuit; Press Release, American Civil Liberties Union, Secret Documents Describe Graphic Abuse and Admit Mistakes (June 14, 2016), https://www.aclu.org/news/cia-releases-dozens-torture-documents-response-aclu-lawsuit; Press Release, American Civil Liberties Union, U.S. Releases Targeted Killing Memo in Response to Long-Running ACLU Lawsuit (June 23, 2014), https://www.aclu.org/national-security/us-releases-targeted-killing-memo-response-long-running-aclu-lawsuit; Press Release, American Civil Liberties Union, Justice Department White Paper Details Rationale for Targeted Killing of Americans (Feb. 4, 2013), https://www.aclu.org/national-security/justice-department-white-paper-details-rationale-targeted-killing-americans; Press Release, American Civil Liberties Union, Documents Show FBI Monitored Bay Area Occupy Movement (Sept. 14, 2012), https://www.aclu.org/news/documents-show-fbi-monitored-bay-area-occupy-movement-insidebayareacom.

[26] *See, e.g.*, Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program*, Intercept, Feb. 8, 2017, https://theintercept.com/2017/02/08/tsas-own-files-show-doubtful-science-behind-its-behavior-screening-program/ (quoting ACLU attorney Hugh Handeyside); Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes,* Wash. Post, Aug. 6, 2016, http://wapo.st/2jy62cW (quoting former ACLU deputy legal director Jameel Jaffer); Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program,* ABC, June 15, 2016, http://abcn.ws/2jy40d3 (quoting ACLU staff attorney Dror Ladin); Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device*, Guardian, Mar. 17, 2016, https://www.theguardian.com/world/2016/mar/17/us-marshals-stingray-surveillance-airborne (quoting ACLU attorney Nate Wessler); David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret,* NPR, Dec. 9, 2015, http://n.pr/2jy2p71 (quoting ACLU project director Hina Shamsi).

to everyone for no cost or, sometimes, for a small fee.[27]  The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog.  The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features.  *See* https://www.aclu.org/multimedia.  The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, as well as analysis about case developments, and an archive of case-related documents.  Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant Congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.

The ACLU website includes many features on information obtained through the FOIA.[28]  For example, the ACLU's "Predator Drones FOIA"

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

---

[27] *See, e.g.*, Hugh Handeyside, *New Documents Show This TSA Program Blamed for Profiling Is Unscientific and Unreliable — But Still It Continues* (Feb. 8, 2017, 11:45 AM), https://www.aclu.org/blog/speak-freely/new-documents-show-tsa-program-blamed-profiling-unscientific-and-unreliable-still; Carl Takei, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site* (Nov. 22, 2016, 3:15 PM), https://www.aclu.org/blog/speak-freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; Brett Max Kaufman, *Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most* (Aug. 8, 2016, 5:30 PM), https://www.aclu.org/blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most; Nathan Freed Wessler, *ACLU- Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida* (Feb. 22, 2015, 5:30 PM), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; Ashley Gorski, *New NSA Documents Shine More Light into Black Box of Executive Order 12333* (Oct. 30, 2014, 3:29 PM), https://www.aclu.org/blog/new-nsa-documents-shine-more-light-black-box-executive-order-12333; ACLU, *ACLU Eye on the FBI: Documents Reveal Lack of Privacy Safeguards and Guidance in Government's "Suspicious Activity Report" Systems* (Oct. 29, 2013), https://www.aclu.org/sites/default/files/assets/eye_on_fbi_-_sars.pdf.

[28] *See, e.g.*, Nathan Freed Wessler & Dyan Cortez, *FBI Releases Details of 'Zero-Day' Exploit Decisionmaking Process* (June 26, 2015, 11:00 AM), https://www.aclu.org/blog/free-future/fbi-releases-details-zero-day-exploit-decisionmaking-process; Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; *ACLU v. DOJ – FOIA Case for Records Relating to the Killing of Three*

webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves. Similarly, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation.[29]

The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA. For example, through compilation and analysis of information gathered from various sources—including information obtained from the government through FOIA requests—the ACLU created an original chart that provides the public and news media with a comprehensive summary index of Bush-era Office of Legal Counsel memos relating to interrogation, detention, rendition, and surveillance.[30] Similarly, the ACLU produced an analysis of documents released in response to a FOIA request about the TSA's behavior detection program[31]; a summary of documents released in response to a FOIA request related to the FISA Amendments Act[32]; a chart of original statistics about the Defense Department's use of National Security Letters based on its own analysis of records obtained through FOIA requests[33]; and an analysis

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

*U.S. Citizens*, ACLU Case Page, https://www.aclu.org/national-security/anwar-al-awlaki-foia-request; *ACLU v. Department of Defense*, ACLU Case Page, https://www.aclu.org/cases/aclu-v-department-defense; *Mapping the FBI: Uncovering Abusive Surveillance and Racial Profiling*, ACLU Case Page, https://www.aclu.org/mappingthefbi; *Bagram FOIA*, ACLU Case Page https://www.aclu.org/cases/bagram-foia; *CSRT FOIA*, ACLU Case Page, https://www.aclu.org/national-security/csrt-foia; *ACLU v. DOJ – Lawsuit to Enforce NSA Warrantless Surveillance FOIA Request*, ACLU Case Page, https://www.aclu.org/aclu-v-doj-lawsuit-enforce-nsa-warrantless-surveillance-foia-request; *Patriot FOIA*, ACLU Case Page, https://www.aclu.org/patriot-foia; *NSL Documents Released by DOD*, ACLU Case Page, https://www.aclu.org/nsl-documents-released-dod?redirect=cpredirect/32088.

[29] *The Torture Database*, ACLU, https://www.thetorturedatabase.org; *see also Countering Violent Extremism FOIA Database*, ACLU, https://www.aclu.org/foia-collection/cve-foia-documents; *TSA Behavior Detection FOIA Database*, ACLU, https://www.aclu.org/foia-collection/tsa-behavior-detection-foia-database; *Targeted Killing FOIA Database*, ACLU, https://www.aclu.org/foia-collection/targeted-killing-foia-database.

[30] *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance*, ACLU (Mar. 5, 2009), https://www.aclu.org/sites/default/files/pdfs/safefree/ olcmemos_2009_0305.pdf.

[31] *Bad Trip: Debunking the TSA's 'Behavior Detection' Program*, ACLU (2017), https://www.aclu.org/sites/default/files/field_document/dem17-tsa_detection_report-v02.pdf.

[32] *Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010*, ACLU, https://www.aclu.org/files/pdfs/natsec/faafoia20101129/20101129Summary.pdf.

[33] *Statistics on NSL's Produced by Department of Defense*, ACLU, https://www.aclu.org/other/statistics-nsls-produced-dod.

of documents obtained through FOIA requests about FBI surveillance flights over Baltimore.[34]

The ACLU plans to analyze, publish, and disseminate to the public the information gathered through this Request. The record requested is not sought for commercial use and the requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.

B.    *The record sought is urgently needed to inform the public about actual or alleged government activity.*

This record is urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).[35] Specifically, the requested record relates to the Trump administration's rules governing the use of lethal force abroad. As discussed in Part I, *supra*, these rules are the subject of widespread public controversy and media attention.[36]

Given the foregoing, the ACLU has satisfied the requirements for expedited processing of this Request.

### IV. Application for Waiver or Limitation of Fees

The ACLU requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested record is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).[37] The ACLU also requests a waiver of search fees on the

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

[34] Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights.

[35] *See also* 32 C.F.R. § 286.8(e)(1)(i)(B) (DOD); 32 C.F.R. § 1900.34(c)(2) (CIA); 28 C.F.R. 16.5(e)(1)(ii) (DOJ); 22 C.F.R. § 171.11(f)(2) (DOS); 5 C.F.R. § 1303.10(d)(1)(ii) (OMB).

[36] *See supra* nn.2–20; *see also* Julia Manchester, *Trump Set to Roll Back Some Limits on Drone Strikes and Raids: Report*, Hill, Sept. 21, 2017, http://thehill.com/policy/defense/351848-white-house-to-roll-back-some-limits-on-drone-strikes-and-raids-report; Conor Friedersdorf, *Giving the Deep State More Leeway to Kill with Drones*, Atlantic, Sept. 22, 2017, https://www.theatlantic.com/politics/archive/2017/09/giving-the-deep-state-more-leeway-to-kill-with-drones/540777; Basma Elbaz, *Trump's License to Kill Will Not Save American Lives*, Huff. Post, Sept. 27, 2017, https://www.huffingtonpost.com/entry/trumps-license-to-kill-will-not-save-american-lives_us_59cc2098e4b0b99ee4a9ca40; Robert Chesney, *President Trump Ponders Changes to the Lethal Force Policy Constraints: What You Need to Know*, Lawfare (Sept. 22, 2017, 1:29 AM), https://www.lawfareblog.com/president-trump-ponders-changes-lethal-force-policy-constraints-what-you-need-know.

[37] *See also* 32 C.F.R. § 286.12(l)(1) (DOD); 32 C.F.R. § 1900.13(b)(2) (CIA); 28 C.F.R. 16.10(k)(1)-(2) (DOJ); 22 C.F.R. § 171.16(a) (DOS); 5 C.F.R. § 1303.70 (OMB).

grounds that the ACLU qualifies as a "representative of the news media" and the record is not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

A.      *The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the ACLU.*

As discussed above, media accounts underscore the substantial public interest in the record sought through this Request. Given the ongoing and widespread media attention to this issue, the record sought will significantly contribute to public understanding of an issue of profound public importance. Because little specific information about the Trump administration's rules governing the use of lethal force abroad is publicly available—and because the Trump administration has thus far declined to publicly release the Principles, Standards, and Procedures—the record sought is certain to contribute significantly to the public's understanding.

The ACLU is not filing this Request to further its commercial interest. As described above, any information disclosed by the ACLU as a result of this FOIA Request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

B.      *The ACLU is a representative of the news media and the record is not sought for commercial use.*

The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the record is not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).[38] The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III)[39]; *see also Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's*

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

[38] *See also* 32 C.F.R. § 286.12 (l)(2)(ii)(b) (DOD); 32 C.F.R. § 1900.13(i)(2) (CIA); 28 C.F.R. 16.10(k)(2)(ii)(B) (DOJ); 22 C.F.R. §171.16 (a)(iii) (DOS); 5 C.F.R. § 1303.50(c) (OMB).

[39] *See also* 32 C.F.R. § 286.12(b)(6) (DOD); 32 C.F.R. § 1900.02(h)(3) (CIA); 28 C.F.R. 16.10(b)(6) (DOJ); 22 C.F.R. § 171.14(b)(5)(ii)(C) (DOS); 5 C.F.R. § 1303.30(j) (OMB).

11

*Action Network v. DOD*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. DOJ*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU is therefore a "representative of the news media" for the same reasons it is "primarily engaged in the dissemination of information."

Furthermore, courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's to be "representatives of the news media" as well. *See, e.g., Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[40]

On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[41] As was true in those instances, the ACLU meets the requirements for a fee waiver here.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

---

[40] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information / public education activities. *See, e.g., Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; *see also Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53–54.

[41] For example, in April 2017, the CIA and the Department of State granted fee-waiver requests in relation to a FOIA request for records related to the legal authority for the use of military force in Syria. In March 2017, the Department of Defense Office of Inspector General, the CIA, and the Department of State granted fee-waiver requests regarding a FOIA request for documents related to the January 29, 2017 raid in al Ghayil, Yemen. In April 2013, the National Security Division of the DOJ granted a fee-waiver request with respect to a request for documents relating to the FISA Amendments Act. Also in April 2013, the DOJ granted a fee-waiver request regarding a FOIA request for documents related to "national security letters" issued under the Electronic Communications Privacy Act. In June 2011, the DOJ National Security Division granted a fee waiver to the ACLU with respect to a request for documents relating to the interpretation and implementation of a section of the PATRIOT Act. In March 2009, the State Department granted a fee waiver to the ACLU with regard to a FOIA request for documents relating to the detention, interrogation, treatment, or prosecution of suspected terrorists.

*    *    *

Pursuant to applicable statutes and regulations, the ACLU expects a determination regarding expedited processing within 10 days. *See* 5 U.S.C. § 552(a)(6)(E)(ii); 32 C.F.R.§ 286.8(e)(1) (DOD); 32 C.F.R. § 1900.34(c) (CIA); 28 C.F.R. 16.5(e)(4) (DOJ); 22 C.F.R. § 171.11(f)(4) (DOS); 5 C.F.R. § 1303.10(d)(4) (OMB).

If the Request is denied in whole or in part, the ACLU asks that you justify all deletions by reference to specific exemptions to the FOIA. The ACLU expects the release of all segregable portions of otherwise exempt material. The ACLU reserves the right to appeal a decision to withhold any information or deny a waiver of fees.

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

Thank you for your prompt attention to this matter. Please furnish the applicable record(s) to:

> Anna Diakun
> American Civil Liberties Union Foundation
> 125 Broad Street—18th Floor
> New York, New York 10004
> T: 212.549.2500
> F: 212.549.2654
> adiakun@aclu.org

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

Respectfully,

Anna Diakun
American Civil Liberties Union
   Foundation
125 Broad Street—18th Floor
New York, New York 10004
T: 212.549.2500
F: 212.549.2654
adiakun@aclu.org

13